Bland, Chancellor.
On adverting to the act of Assembly in relation to this matter,(a) I deemed this proceeding erroneous: whereupon the plaintiffs on the 15th instant filed their petition praying for a commission to three persons therein named, and again submitted.their case upon the notes of their solicitor, which with the proceedings were read and considered.
According to the English course of proceeding it would seem to be a general rule, that the defendant must appear in person and swear to his answer before one of the masters in chancery. This *551 was greatly inconvenient to defendants who resided at any distance from the place where the court was held. Hence at first as an indulgence and by a special order, but now and for a long time past, where a defendant resides more than twenty miles from London, or is unable to travel, it is a matter of course to issue a dedimus potestatem to take his answer.(b) And the four commissioners, to whom the dedimus is directed, are named by the parties, and approved in like manner as commissioners for taking testimony; any three or two of whom are to take the answer, (c)
With regard to an infant defendant, however distant within the kingdom he may reside, he must be brought in; because the court must see, from inspection and observation, that he is an infant, for whom it is necessary, that a guardian should be appointed by whom he may answer. But if the infant be abroad, or unable to attend, a. commission must go to appoint a guardian and take his answer by such guardian. The dedimus or commission, in such case is similar; the four commissioners are appointed in the same way as; and it is executed in all respects like, that which goes to take the answer of an adult defendant who resides more than twenty miles from London.(d)
The practice in Maryland is different. I have met with no evidence, that it ever was at any time, either before or since our revolution, the practice of this court to have the defendant actually brought in merely to swear to his answer before the Chancellor or the register of the court. It appears to have been always the practice here for the defendant to swear to his answer before a judge or a justice of the peace, which when thus authenticated and filedj has been uniformly received and dealt with as an answer, (e) This practice is admitted on all hands to be exceedingly convenient, and I have never heard of the slightest evil arising from it. But if a defendant neglects or refuses thus to answer, he may be attached and committed to close custody until he does answer, (f) *552 If an adult defendant reside abroad or beyond the jurisdiction of the court it has been the practice, where he himself wishes or is willing to answer, to issue a commission, on petition, for taking his answer to four commissioners. And the course of proceeding in such case appears to be substantially similar to the English mode of obtaining the answer of a defendant who resides abroad or at a greater distance than twenty miles from London, (g)
It would seem, that, according to the course of proceeding in the English Court of Chancery, there may be a material distinction between a guardian ad litem of an infant-defendant, and a guardian having no other concern with the case than merely to answer the bill. The guardian ad litem must not only answer the bill, but is bound to inform himself of all circumstances, and to make as good, a defence for his ward as the nature of his case will admit; while on the other hand, as it would seem, the duty of a guardian to answer only, extends no further than merely to the making and filing of an answer.(h) But however this may be .in England, I have met with no clear unequivocal evidence of any such distinction ever having prevailed here.(i) In all cases in this court the guardian of an infant defendant, whether appointed by a special order, or under a commission, has always been considered and treated as a guardian ad litem, appointed for the purpose of answering and defending the suit, and whose duty it is not only to answer the bill, but to make the best defence he can according to the circumstances, for the benefit of his ward ; and this appears to have been recognised as the duty of such a guardian by our acts *553 of Assembly in relation to this matter, (j) It appears to have been formerly usual, where the infant resided within the State, either to have him brought into court hy the messenger, if able to attend, and a guardian assigned him, by whom he was to answer, (k) or to issue a commission to four, or a plurality of persons, any three or two of whom were authorized to appoint a guardian and take his answer by such guardian in exact conformity to the English practice, (l)
If it appears upon the face of the proceedings-, or upon enquiry into the fact, that the defendant is an infant, the court cannot proceed without a guardian to answer and defend for him ;(m) and for that purpose the court may either have him brought before it, or allow a commission to be issued, which is now much the more usual course; for, although there can be no doubt of the power of the court to have an infant defendant brought in from any part of the State ;(n) yet it is rarely found to be convenient, or necessary to do so merely for the purpose of assigning to him a guardian ad litem. . If a guardian so appointed refuses to act, or after accepting the trust dies, another may be appointed in his stead by special order or under a commission.(o) But although a person appointed guardian ad litem cannot be compelled to take upon himself the trust; yet if he does accept it, he may he compelled by attachment to appear and answer.(p) For a long time past it has been *554 considered as the settled practice, to let a commission go to one commissioner only within the State to appoint a guardian and take the answer of an infant defendant; which has been found to be so cheap and convenient a method, that I have never known a commission, in my time, to he issued for that purpose to more than one commissioner within the State, (q)
In England, when an infant defendant resides out of the jurisdiction of the court, a commission may be sent abroad to appoint a guardian and take his answer, and on a supplemental bill being afterwards filed the same guardian may be authorized to answer for him.(r) But no instance has been shewn, prior to the year 1797, in which a commission has issued from this court, to obtain the answer of an infant defendant beyond the jurisdiction of the court, to a single commissioner only. In the case cited,(s) the bill was filed to obtain a conveyance of lands in specific performance of a contract; it was stated in the bill, that the infant defendants lived in Adams county in Pennsylvania; and subpoenas were prayed generally. Upon which a commission was, on the 14th of December 1802, issued to one commissioner only in Frederick county, in this State, which is conterminous with Adams county in Pennsylvania; who in pursuance thereof appointed a guardian, stated to be of Frederick county, by whom the answers were taken and returned. The inference from this case is, that it was believed to be more convenient thus to send the commission to one commissioner in Frederick than to four in Pennsylvania.
Such appears to have been the understanding of the profession as to the practice when the legislature declared, that in cases of partition, the Chancellor on the complainant’s motion may direct a commission to issue unto three persons such as he shall approve, authorizing them or any two of them to go to the infant and appoint a guardian for the purpose of answering and defending the suit, and authorizing them likewise to take the answer and return it to the court, (t) Which provision was afterwards extended to cases where all the persons reside out of the State. And it has been also provided, that in case of lands in this State descending to minors residing out of this State, on a bill filed by the prochein ami of any such minor, a commission may be issued to three per *555 sons in the State where the infant resides, authorizing them or any two of them to appoint a guardian to answer and to return his answer, (u) In these particulars therefore the practice of the court has been established by positive legislative enactment. The course is prescribed in cases where it is said to have been doubtful whether or not there was any method of proceeding whereby the object might be attained. The mode thus pointed out, cannot be considered as an addition to any antecedent one, since it is expressly declared, that it was prescribed in order .to remove all uncertainties upon the subject; and not for the purpose of introducing a new form of proceeding in addition to an existing one. It does not give a cumulative remedy, but unalterably settles and defines a previous ambiguous practice, so that the court might safely and readily exercise its then existing powers. Taking this view of the subject it clearly follows, that the court can have no authority to pursue a course of proceeding different from that which has been thus laid down by the legislature. Any practice established by the court itself may be altered for good reasons ; or by usage such practice may, and in many instances has gradually glided into a new or different course; but the positive enactments of the General Assembly can never be disregarded.
By an English statute enacted in 1346,(v) it was declared, that the justices of gaol delivery should take an oath before the Chancellor, &c. yet no such oath is now taken, and the statute is considered as obsolete; (w) and by an act of Parliament, passed in 1416,(x) it was declared, that no one should sue out a suipcena in chancery until he had given security for costs in case he failed to sustain his bill. It is said, that this statute has in England by degrees grown out of use, and is now entirely vanished, (y) And against a statute passed in the year 1705,(z) a practice of no more than seven years was allowed to prevail.(a) A statute passed in 1413,(b) directed, that none should be elected members of parliament who were not at the time resident of the place from which they were returned. This is another instance wherein the principle of desuetude has been avowedly set up against an unrepealed legislative enactment, (c) And our owm *556 act,(d) which positively prohibits clerks and registers from suffering the papers and records to be taken out of their offices, appears to have been so long and so generally disregarded as to have fallen into oblivion, (e)
These precedents would seem to sanction the position, that a positive legislative enactment may be virtually repealed by a long, general, and uninterrupted course of practice. But they are precedents which I should feel a great repugnance to adopt and enlarge upon. I hold it to be my duty to treat the acts of my predecessors with respect; and to yield implicit obedience to my superiors ; yet I cannot lose sight of the sphere assigned to the judiciary, and allow myself, by any suggestion arising from the case, or by following any lightly considered precedent, to overstep the limits constitutionally prescribed to the judicial department to which I belong. No judge or court, either -of the first or last resort, can have any right to legislate; and there can be no difference between the power to declare an act of Assembly obsolete, and the power to enact a new law. The power to repeal and to enact are of the same nature. I shall therefore always consider an express provision of a constitutional act of Assembly as an authority superior to any usage or adjudged case whatever.
The first enactment upon this subject(f) is strictly and literally applicable to the taking of an answer of an infant abroad in a partition case, such as this is; and that act has, as it would seem, been since much extended, (g) Hence I hold myself imperatively *557 bound by the legislative rule thus laid down. But precedents have been adduced to shew, that this legislative rule has become obsolete, or that another and equally efficacious parallel mode of proceeding had been in force, and is now in use. AE the precedents, I have seen, of commissions for taking answers abroad, are those of adult defendants ; in all of which the commission, as in England, was directed to four commissioners. I have been referred to no example of a commission to take the answer of an infant defendant who resided in a foreign country or any other State of our Union; nor have I met with any. But prior to and about the year 1797, it was the practice, as well in cases of infant defendants within, as of adult defendants out of the State, to send the commission to four or at least a plurality of commissioners; and hence the first legislative enactment, in relation to this matter,(h) cannot be regarded as in any sense leaving an old and parallel practice in full force;' since it was the practice in all cases to send the commission to a plurality of commissioners. The cases that have arisen since the passage of that act, can therefore only be regarded as evidence of a departure from the legislative rule, and not as proof of a coexisting parallel practice. There have been only four cases adduced as shewing a departure from the directions of the act; and all of them are cases of commissions directed to one commissioner only, in the District of Columbia, to take the answers of infants resident there, (i) All of those cases manifestly appear to have passed sub silentio ; and, I can readily conceive how easily such a proceeding, which had become the established mode of obtaining an answer from an infant defendant within this State, should have been pursued as a correct way of getting an answer from an infant defendant-residing in Washington county of the District of Columbia, which had formerly been a part of this *558 State. Such precedents are generally considered to be of the lowest class; but when adduced for the purpose of controlling or abrogating an act of Assembly, they cannot be allowed the weight of a feather.
The original act(j) speaks of an infant residing out of the State; and the mode which it prescribes, for .obtaining the answer of such an infant, is clearly one which may now be, and was formerly very commonly pursued for obtaining the answer of an infant within the State; and therefore, whether the infant is considered as being at the time a nonresident, in every sense of that term, or. not, is unimportant. It is sufficient, that he is then, when the answer is taken, in the state or country to which the commission is directed : for, if he has a guardian appointed by whom his answer is taken in the most formal manner, so as to warrant its being received whether he is considered as a resident within or out of the State; then the answer, being in a form to suit either alternative, it bécomes unnecessary to decide whether he was, at the time of its being taken, a mere sojourner abroad, or actually “residing out of the State,” or not.
The case of publication against a nonresident, presents an entirely different question; because the publication is to stand in the place of actual notice only in case the party be in truth a nonresident ; and therefore, if he does not, in fact, at the time, reside out of the State, such a substitute for the actual service of process •cannot be resorted to, for the purpose of enabling the court to act upon the case; and therefore, the decree will be void: since the publication against a nonresident can, in no way, be fashioned, like a commission to take the answer of an infant defendant, to suit both alternatives of- a residence, or a non-residence; and consequently, if the publication be not valid upon the ground of the actual nonresidence of the party, it is a nullity to all intents and purposes whatever.
Whereupon it is ordered, that a commission issue as prayed by the said petition of the plaintiffs filed on the 15th instant.
A commission was issued and an answer returned accordingly; after which, on the 8th May 1829, it was decreed that the real estate be sold, &c.

 1797, ch. 114, s. 5.

 1 Harr. Pra. Chan. 283; 1 Newl. Chan. 124.

 1 Harr. Pra. Chan. 288.

 Marlborough v. Marlborough, 1 Dick. 74; Jongsma v. Pfiel, 9 Ves. 357; Tappen v. Norman, 11 Ves. 563.

 Brice v. Alexander, MS. Chan. Proc. lib. W. K. No. 1, fol. 43; Mackall v. Morsell, MS. Chan. Prom lib. W. K. No. 1, fol. 223.

 Cooper v. Cooper, 1788, MS. Chan. Proc. lib. S. H. H. let. B. fol. 351.
Bowie v. Mockbee. — December 1780. — Rogers, Chancellor. — On motion of the complainant’s solicitor, ordered, that the defendant stand committed to close custody of the sheriff of Prince George’s county, to remain in custody of the said sheriff until the said defendant shall put in and file a good and sufficient answer in this case, and pay the costs of the said attachment of contempt issued against him in the cause aforesaid.— Chan. Proc. Lib. No. 1, fol. 295.

 Hornby v. Pemberton, Mosely, 57; Prout v. Slater, MS. 3d April, 1799, Chan. Proc. lib. S. H. H. No. 7, fol. 25; Chan. Proc. 1761, lib. D. D. No. J. fol. 59.

 1 Newl. Chan. 105, 138; 2 Newl. Chan. 152; 1 Harr. Pra. Chan. 708.

 Chapman v. Barnes. — This was a creditor’s bill filed against the heir and administrator of the late Richard Barnes to have his land sold for the payment of his debts. The bill stated, that Mary E. Barnes, the heir of Richard her father, was an infant, and prayed a subpoena against her as well as against the administrator; a subpoena was issued accordingly, and after-wards a commission was issued in the usual way to take the answer of the infant, under which her answer was returned and filed on the 24th of February 1814.
19th March, 1814. — Kilty, Chancellor. — A motion was made by counsel for the appointment of a guardian to defend for the infant Mary Elizabeth Barnes, according to the practice in England. The Chancellor is not apprised of its having been done in this State ; but such a practice appearing to be equitable and probably necessary, it is hereby ordered, that John Barnes, of Charles county, be and he is hereby appointed guardian for the said Mary Elizabeth Barnes, to defend on her behalf the said suit.

 1785, ch. 72, s. 1; 1797, ch. 114, s. 5.

 Eyles v. Le Gros, 9 Ves. 12; Hill v. Smith, 1 Mad. Rep. 290.

 Gist v. Gist, 3d November 1798, Chan. Proc. lib. S. H. H. No. 7, fol. 48, 52; Merriweather v. Hood, MS. June 1800; McCoy v. Springer, MS. October 1800.

 Roberts v. Stanton, 2 Mun. 133.

 Dulany v. Frazer, MS. per Hanson, Chancellor, 19th November, 1792.
Griffith v. Davis. — 1789.—Rogers, Chancellor. — On motion of complainant’s counsel, ordered, that the messenger bring into court the body of Henrietta Davis, the infant, on the fourth day of next court, she being heretofore returned by the sheriff of Montgomery county, summoned to appear in this cause, and attachment having been, awarded on her failure to appear on the said summons. — Chan. Proc. lib. S. H. H. let. C. fol. 61.

 2 Newl. Chan. 155; Wilson v. Bott, 1 Pric. 62; Perkins v. Hammond, Dick. 287; Smith v. Marshall, 2 Atk. 70; McMechen v. Evans, MS. 3d November 1817.

 Taylor v. Durben, 1787, Chan. Proc. lib. S. H. H. let. B. fol. 41.
Perkins v. Gleaves. — February, 1790. — Hanson, Chancellor. — Rule that Doctor William Gleaves shew cause to this court on the first of April next, why an attachment should not issue against him for a contempt in refusing to answer on behalf of the infant to whom he was appointed guardian ad litem, by a commission issued by this court and returned. No cause having been shewn, it is ordered that attachment issue against William Gleaves to answer, &c.— Chan. Proc. lib. S. H. H. let. C. fol. 582.

 Brown v. Brooker, MS. October 1800, &c. &c.

 Jongsma v. Pfiel, 9 Ves. 357; Lushington v. Sewell, 6 Mad. 28.

 Diffendall v. Diffendall, Chan. Proc. lib. S. H. H. No. 7, fol. 148, 155.

 1797, ch. 114, s. 5.

 1818, ch. 193, s. 11 & 12; 1831, ch. 311, s. 8.

 20 Edw. 3, c. 3.

 Jurisd. Court Chan. 13.

 15 Hen. 6, c. 4.

 1 Harr. Pra. Chan. 200; 2 Com. Dig. 371.

 4 & 5 Anne.

 Regina v. Ballivos de Bewdley, 1 P. Will. 223; Money v. Leach, 3 Burr. 1755.

 1 Hen. 5, c. 1.

 2 Hall. Mid. Ages, 156.

 1747, ch. 3, s. 10.

 1832, ch. 302, s. 1.

 1797, ch. 114, a. 5.

 1818, ch. 193, s. 11 & 12
Burd v. Greenleaf. — It was objected in this case, that all the parties were not before the court. Publication against the infant heirs of a defendant had been made according to the act of 1799, ch. 79, s. 1 & 4, instead of serving a subpoena upon them.
February, 1808. — Kilty, Chancellor. — It appears, that the general acts of Assembly for regulating the chancery practice do not extend to infants, but that particular acts have been passed for the purpose of binding them; as in the cases of contracts by their ancestors, mortgages, debts, partition, &c. The first section of the act of 1795, ch. 88, did not, as the complainants have contended, extend to infants, hut provided for publication against persons of full age. The act of 1799, ch. 79, put infants on tile same footing with other defendants, excepting reserving at all events the liberty of appearing within eighteen months. This section is not restricted to laws within the first section of the same act, but- is applicable also to the first section of the act of 1795, or any other general act. Let us examine the intention of the two acts. The act of 1795 permits an appearance and re-examination within eighteen months, and the first decree is of course not final. The reason of which might be, that there could he no certainty of the absent defendant having seen the publication. *557 The act of 1799 malees the first decree final, provided the subpoena is proved to be served. There is no doubt a considerable difficulty in making this service and proof; where the party is out of the State; but the complainant, in any case, has his choice of the two modes of proceeding. The difficulty of serving the subpoena is greater as to the infants. And the reason does not apply to them, for after such service, the eighteen months is still allowed to them. The act of 1795 allows the publication, which by the fourth section of the act of 1799 applied to the infant defendants in this case. The order may be considered as made under either act, according as the subpoena might or might not be served, and the service might have been directed with that view.

 1797, ch. 114, s. 5.

 Low v. Dawson, MS. 30th September, 1818; Burgess v. The Bank of Columbia, MS. 13th April 1820; Law v. Law, MS., 6th December 1824; Shaaf v. Taney, MS. 10th May 1826.

 1797, ch. 114, s. 5.